STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 CA 0203
2023 CW 0099

DERRICK WOODBERRY

VERSUS

LOUISIANA DEPARTMENT OF
PUBLIC SAFETY AND CORRECTIONS

Judgment Rendered: **SEP 15 2023**

* * * * *

Appealed from the
19th Judicial District Court
Parish of East Baton Rouge, State of Louisiana
No. C681512

The Honorable Timothy E. Kelley, Judge Presiding

* * * * *

Derrick Woodberry                    Plaintiff/Appellant,
St. Gabriel, Louisiana               In Proper Person


Jonathan Vining                      Defendant/Appellee,
Baton Rouge, Louisiana               Louisiana Department of
                                     Public Safety and Corrections


* * * * *

BEFORE: WELCH, HOLDRIDGE, AND WOLFE, JJ.

**WOLFE, J.**

Derrick Woodberry, an inmate in the custody of the Louisiana Department of Public Safety and Corrections (DPSC), filed a supervisory writ application and an appeal of the district court's judgment that affirmed DPSC's final decision in Administrative Remedy Procedure (ARP) number LSP-2018-2482 and dismissed his petition for judicial review of that decision. We affirm the judgment and dismiss the writ application.

## FACTS AND PROCEDURAL HISTORY

In 1995, Woodberry was convicted of a sex offense and other crimes, and sentenced to terms of imprisonment that were ordered to run concurrent with a thirty-five-year sentence.[1] While incarcerated, he opted to forego earning incentive wages in exchange for earning good time credits toward early release. As a result of the good time credits he earned, Woodberry was determined to be eligible for release in November 2011. As a convicted sex offender, DPSC regulations and Louisiana law required Woodberry to have an approved residence plan prior to release. Since Woodberry did not have an approved residence, he was advised that he would remain incarcerated until he had an approved plan or until he completed the full term of his sentence. The only proposed residence plan contained in the record was rejected due to the residence's proximity to a playground.

While he remained incarcerated, a detainer was placed on Woodberry, and he was arrested and convicted of additional charges.[2] In January 2014, he was sentenced to terms of imprisonment that were ordered to run concurrent with two life sentences. In relation to those sentences, DPSC determined that Woodberry was eligible to earn incentive wages as of April 20, 2014.

---

[1]  See Orleans Parish Criminal District Court, Docket Number 371-742.

[2]  See Orleans Parish Criminal District Court, Docket Number 512-931.

Woodberry now contends that he is owed all incentive wages "earned" while serving his original sentence—*i.e.*, the incentive wages he bargained away when he opted into the good time program. Woodberry reasons that since he was never released from custody, he never "received" the good time credits he earned and is alternatively owed the wages. Woodberry filed an ARP, seeking backpay of the incentive wages, alleging he "was deprived of [them] without due process of law." DPSC denied the ARP at both the first and second steps.[3] In its second step response, DPSC explained that Woodberry was not entitled to incentive wages while earning good time credits against the original thirty-five-year sentence.

Unsatisfied with DPSC's response, Woodberry filed a petition for judicial review in the Nineteenth Judicial District Court. The matter was referred to a commissioner for screening pursuant to La. R.S. 15:1178 and La. R.S. 15:1188.[4] The commissioner recommended that the district court affirm DPSC's decision and dismiss Woodberry's petition with prejudice. In her report, the commissioner noted that the record contained no indication that Woodberry filed a petition for judicial review contesting DPSC's failure to release him on his scheduled good time release date in 2011, nor had any party alluded to such. The commissioner further noted that if Woodberry had not been sentenced on the new convictions, DPSC would have been required to hold him in custody until an approved residence plan was submitted or until his full-term release date. The commissioner concluded that Woodberry's failure to submit an adequate residence plan so that he could be released on his good

---

[3] In its first step response, DPSC denied Woodberry's claim for backpay of the wages he would have received if he had not opted into the good time program, but noted that Woodberry was owed a pay supplement for "a few weeks" that were missed after April 20, 2014. The payment of incentive wages after 2014 is not at issue in this appeal.

[4] The office of commissioner for the Nineteenth Judicial District Court was created to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. La. R.S. 13:711 and 13:713(A). The district court judge "may accept, reject, or modify in whole or in part the findings or recommendation made by the commissioner and also may receive further evidence or recommit the matter to the commissioner with instructions." La. R.S. 13:713(C)(5).

3

time release date did not void the good time contract. The commissioner found no evidence to show that DPSC breached the contract's terms and no authority to support Woodberry's request for backpay of the incentive wages he forfeited. After *de novo* review, the trial court adopted the commissioner's reasons as its own, affirmed DPSC's decision, and dismissed the petition for judicial review.

## DISCUSSION

Judicial review of this matter is governed by La. R.S. 15:1177, which allows a reviewing court to reverse or modify DPSC's decision only if substantial rights of the appellant have been prejudiced because the administrative decisions or findings are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) arbitrary, capricious, or characterized by an abuse of discretion; or (6) manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. When reviewing DPSC's decision, the district court functions as an appellate court. **Marchand v. Louisiana Department of Public Safety & Corrections**, 2020-0747 (La. App. 1st Cir. 2/24/21), 322 So.3d 269, 272, writ denied, 2021-00457 (La. 9/27/21), 324 So.3d 104. An aggrieved party may appeal a final judgment of the district court to the appropriate appellate court.[5] La. R.S. 15:1177(A)(10). On appeal of the district court's judgment, the appellate court reviews the administrative record *de novo* under the criteria of La. R.S. 15:1177(A)(9). **Marchand**, 322 So.3d at 273. The appellate court owes no deference to the district court's factual findings or legal conclusions, just as the

---

[5] Woodberry filed a supervisory writ application and an appeal, seeking review of the district court's judgment. The writ application was referred to this appellate panel. See **Woodberry v. Louisiana Department of Public Safety and Corrections**, 2023-0099 (La. App. 1st Cir. 4/24/23) (unpublished writ action). Since the district court's judgment dismissed Woodberry's petition for judicial review, it is a final, appealable judgment. See La. R.S. 15:1177(A)(10); **Bell v. Louisiana Department of Public Safety and Corrections**, 2019-0755 (La. App. 1st Cir. 9/17/19), 2019 WL 4447590 (unpublished writ action). Accordingly, we dismiss Woodberry's supervisory writ application and consider the merits of Woodberry's appeal. Cf. **Anderson v. Laborde Construction Industries, L.L.C.**, 2019-0356 (La. App. 1st Cir. 3/12/20), 311 So.3d 1072, 1079 n.9.

4

Louisiana Supreme Court owes no deference to the factual findings or legal conclusions of the appellate court. **Marchand**, 322 So.2d at 273.

On appeal, Woodberry argues that he is constitutionally entitled to receive the incentive wages he would have been paid if he had not opted to receive good time credits, as DPSC lacks authority to withhold the wages when it did not award the good time credits earned. He acknowledges that La. R.S. 15:574.4.3 requires that sex offenders have an approved residence plan prior to good time release.[6] He states that he "does not contest the language or authority of [that] statute with respect to his release or any liberty interest." However, he complains that La. R.S. 15:574.4.3 was not in effect and he was not advised of any such residence plan requirement when he waived his incentive wages to earn good time credits. He further complains that DPSC has failed to promulgate rules and regulations expressly informing inmates that incentive wages would be lost if no residence plan is approved.

This court has held that the law in effect at the time of release governs the terms of release, rather than the law in effect at the time of the commission of the underlying offense or at the time the inmate enters into the good time credits program. **Bancroft v. Louisiana Department of Corrections**, 635 So.2d 738, 741 (La. App. 1st Cir. 1994). Further, "[t]he fact that [an inmate] has a constitutionally

---

[6] Inmates released from custody as a result of diminution of sentence based on good time credits are released as if on parole. La. R.S. 15:571.5(A); **State ex rel. Square v. State**, 2015-1409 (La. 1/13/17), 206 So.3d 872, 872-73 (*per curiam*); **Bancroft v. Louisiana Department of Corrections**, 635 So.2d 738, 740-41 (La. App. 1st Cir. 1994). Louisiana Revised Statutes 15:574.4.3(E)(1), which was designated as La. R.S. 15:574.4(S)(1) prior to its amendment by 2010 La. Acts 241, §1 (eff. Aug. 15, 2010), provides:

> In cases where parole is permitted by law and the offender is otherwise eligible, the committee on parole shall not grant parole to any sex offender either by an order of the committee on parole or office of adult services pursuant to R.S. 15:571.3 until the Department of Public Safety and Corrections, division of probation and parole, has assessed and approved the suitability of the residence plan of such offender. In approving the residence plan of the offender, the department shall consider the likelihood that the offender will be able to comply with all of the conditions of his parole.

Woodberry correctly argues on appeal that the Commissioner's report cited an incorrect statute for this requirement. Since we conduct *do novo* review of the administrative record while performing our review, that error is inconsequential. See **Marchand**, 322 So.3d at 273.

5

protected interest in good time does not deprive the legislature of the right to enact legislation that possibly has the effect of impacting that statutorily created interest." **Kozlowicz v. State, Department of Public Safety & Corrections,** 2008-1806 (La. App. 1st Cir. 3/27/09), 9 So.3d 1000, 1006. Any conditions imposed on an inmate eligible for release as a result of diminution of sentence are valid so long as they are lawful on the proposed date of release. **Kozlowicz,** 9 So.3d at 1007; **Bancroft,** 635 So.2d at 741. "The fact that those conditions may not have been required at the time the [inmate] chose to earn good time credit is not legally relevant." **Kozlowicz,** 9 So.3d at 1007 (citing **Bancroft,** 635 So.2d at 741); see also **Thompson v. Louisiana Department of Public Safety and Corrections,** 2016-0545 (La. App. 1st Cir. 2/17/17), 2017 WL 658734, *3 (unpublished) (finding that the imposition of an approved residence requirement prior to a sex offender's release does not result in an *ex post facto* application of law or violation of the Louisiana or United States Constitution).

Additionally, this court has recognized that the result of an inmate opting to earn good time credits is that the inmate becomes *eligible* for early release. See **Kozlowicz,** 9 So.3d at 1007; **Bancroft,** 635 So.2d at 741. There is no dispute that Woodberry became eligible for early release based on his good time credits. However, he could not be released without an approved residence plan. We find no constitutional violation by DPSC for its compliance with the mandates of La. R.S. 15:574.4.3.[7] This court has previously recognized that DPSC takes no action to deprive an inmate of his good time when it is statutorily prohibited from releasing the inmate because the inmate failed to comply with the approved residency requirement. **Kozlowicz,** 9 So.3d at 1006.

---

[7] Woodberry raises arguments that DPSC bore the responsibility of obtaining an approved residence plan for him and that its failure to do so breached its contractual obligation to him. We find no merit to these arguments. See **Thompson,** 2017 WL 658734, *3 (recognizing that it was the obligation of the inmate to obtain an approved residence plan prior to his early release).

In support of his contention that his good time option should be considered voided, Woodberry argues that the good time form he signed provides that the contractual agreement may be voided. The form requires that the inmate acknowledge that he may fail to earn good time through disciplinary actions or other means as provided by law and also "that [DPSC] may void this option at any time, in the event that it is determined that [the inmate is] ineligible to receive good time at this particular rate." However, by signing the form the inmate explicitly recognizes that *the inmate cannot revoke his option* during the sentence or term for which he is incarcerated. Thus, rather than supporting Woodberry's claims, the good time option form actually confirms that he is not entitled to recoup the wages he bargained away to earn the good time credits.

Essentially, after being convicted of additional crimes and sentenced to life imprisonment, Woodberry realizes he made a bad choice in opting into the good time program while serving his original sentence.[8] We find no authority that would entitle him to the relief he seeks.

## CONCLUSION

After thorough review of the record in this matter in accordance with La. R.S. 15:1177(A), we find no error in the district court's judgment that affirmed DPSC's decision. Accordingly, we affirm the judgment of the district court. Supervisory writ application 2023 CW 0099 is dismissed. All costs of this appeal are assessed to Derrick Woodberry.

**JUDGMENT AFFIRMED; WRIT DISMISSED.**

---

[8] Although the record does not contain the details of the crimes that resulted in the life sentences, it does establish that Woodberry has been incarcerated since 1995. The commissioner's report indicates that the offenses occurred in 1992—before the original sentence was imposed and before Woodberry signed the good time option form.

7